HBC VENTURES, LLC, )
    Plaintiff, )
)
   vs. ) No. 5:06-CV-190-F
)
HOLT MD CONSULTING, INC., )
WELLNESS PUBLISHING, INC., and )
STEPHEN HOLT, M.D., )
    Defendants. )
)
  and )
)
HOLT MD CONSULTING, INC., )
    Third Party Plaintiff, )
)
   vs. )
)
ROBERT R. BAREFOOT, )
    Third Party Defendant. )
_____ )
)
NATURE'S BENEFIT, INC., and )
STEPHEN HOLT, M.D., )
    Plaintiff and Counterclaim )
    Defendant, )
)
   vs. ) No. 5:07-CV-342-F
)
NFI and LARRY CHRISCOE, )
    Defendants and Counterclaim )
    Plaintiffs. )

This matter is before the court on the parties' supplemental briefing [DE-224, 225] filed

pursuant to the court's directive in its April 15, 2011, Order [DE-221]; the Motion to Seal [DE-

227] filed by HBC Ventures, LLC, and NFI; the Notice of Bankruptcy Court Orders Lifting the

Automatic Stay and Authorizing the Case to Proceed to Trial on All Claims Against All Parties
[DE-230]; and the Motion to Strike [DE-232] filed by Stephen Holt, M.D.

This case arises out of the parties' dispute over the rights to manufacture and/or distribute
Barefoot Coral Calcium Plus, a dietary supplement. The parties previously have filed numerous
motions on the various claims asserted in this action. In an Order filed on April 15, 2011, the
court issued various rulings on some of the pending motions, and held other motions in abeyance.
The parties' latest round of filings indicates there is confusion as to the effect and intent of the
court's April 15, 2011, Order. Accordingly, although this order presumes familiarity with the
history of the case, the court will summarize the main rulings of the April 15, 2011, Order:

(1) The court found that the alter ego claims asserted by the HBC parties
were "general" alter ego claims, and therefore the bankruptcy trustees for Nature's
Benefit and Holt Consulting had exclusive standing to pursue the alter ego claims.
April 15, 2011, Order [DE-221] at p. 22-23. The court directed the HBC parties
to provide a copy of the April 15, 2011, Order to the Bankruptcy Court for the
District of New Jersey, and the bankruptcy trustees for Nature's Benefit and Holt
Consulting. The court further directed the HBC parties to obtain a judicial
determination of whether the bankruptcy trustees would pursue the alter ego
claims against Dr. Holt or abandon the claims.

(2) The court held in abeyance the Holt parties' motions to dismiss for
lack of personal jurisdiction, pending notification of the bankruptcy trustees'
decisions. The outstanding issue in the motions was whether sufficient facts exist
to pierce the corporate veils of Nature's Benefit, Inc., and/or Holt Consulting, Inc.,
so that contacts of those entities could be imputed to Dr. Holt for personal
jurisdiction purposes. Because the issue is inextricably intertwined with the
merits of the HBC parties' alter ego claims against Dr. Holt, the court reserved
ruling on it. The court explained that if the trustees opt *not* to pursue alter ego
claims against Dr. Holt, then the court would allow the jury to make factual
findings on the piercing the corporate veil issue. The court also held in abeyance
the Motion to Strike the Expert Testimony of Martin Brinkley.

(3) The court allowed the HBC's motion for summary judgment in part,
and dismissed the claims against Johnny Chriscoe.

2

(4) The court denied, in part, the Holt parties' motion for summary judgment with regard to the HBC's claims for defamation, breach of contract, breach of express and implied warranties, fraud, negligent misrepresentation, unfair and deceptive trade practices, and declaratory judgment, and NFI's claims for declaratory judgment and unfair and deceptive trade practices. The Holt parties also argued they were entitled to summary judgment on HBC's claim for damages because HBC lacked standing as to any damages claim and because HBC could not prove damages to a reasonable certainty. The court declined to rule on that issue, and instead directed the parties to submit further briefing, while citing to relevant authority.

Order [DE-221].

The parties timely filed their supplemental briefing. On September 27, 2011, HBC and

NFI filed a "Notice of Bankruptcy Court Orders Lifting the Automatic Stay and Authorizing the

Case to Proceed to Trial on All Claims Against All Parties" [DE-230] and attached orders from

the Bankruptcy Court for the District of New Jersey. The orders state, in pertinent part, the

following:

[T]he automatic stay shall be, and it hereby is, vacated so as to allow the continuation and resolution of the North Carolina Litigation . . . against all parties and with respect to all claims raised therein, up through and including the obtaining of any judgment and execution thereupon; and it is

FURTHER ORDERED that, to the extent necessary, [HBC, NFI & Chriscoe] are granted standing to prosecute and pursue any derivative claims of the Debtors against Dr. Stephen Holt in the North Carolina Litigation . . . .

*See* Notice, Ex. A [DE-230-1] and B [DE-230-2]. That same day, HBC and NFI filed a Request

for Status Conference and Setting of Trial Date [DE-231], stating that the bankruptcy court

orders removed all impediments to scheduling a trial, and they therefore requested a status

conference to set a trial date.

In response, Dr. Holt filed a Motion to Strike [DE-232] the Notice and Request filed by

HBC and NFI. Therein, Dr. Holt protests that the case is not ripe for trial, noting that the issue of

3

whether HBC has standing to pursue damages for royalties paid to the Holt parties is still outstanding. Dr. Holt also suggests that he cannot be held liable for the damages claim because the contract in dispute in this action absolves him of any personal liability.

With his background in mind, the court turns to the present motions and outstanding issues.

## I. MOTION TO SEAL

HBC and NFI, in response to this court's earlier order, filed the Expert Report of William C. Dameworth as a proposed sealed document, and asks the court to maintain the report under seal.

Prior to sealing court documents, a district court must first determine the source of the public's right to access the documents: the common law or the First Amendment. *Stone v. Univ. of Md.*, 855 F.2d 178, 180 (4th Cir.1988). The Fourth Circuit has determined that the First Amendment right of access attaches to documents filed in support of a summary judgment motion. *See Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir.1988). Where, as here, the First Amendment guarantees access to documents, such access "may be denied only on the basis of a compelling governmental interest, and only if the denial is narrowly tailored to serve that interest." *Stone*, 855 F.2d at 180.

As a few courts have observed, however, there is difficulty in applying the First Amendment access analysis in the context of a civil case involving nongovernmental (not hyphenated in next two sentences) litigants. *See, e.g., Haas v. Golding Transp., Inc.*, No. 1:09-CV-1016, 2010 WL 1257990, *7 n.4 (M.D.N.C. March 26, 2010). Indeed, the District Court for the Middle District of North Carolina aptly questioned: "[I]n the context of a civil case involving

4

nongovernmental litigants . . . how does one define or discern a 'governmental interest?' Does the government have an interest in the vindication of an individual's right to personal privacy or a business's right to freedom from unfair competitive advantage?" *Id.* Of course, one response to these questions may be, no, the government does not have any interest in any of these rights, and consequently, most records filed by a nongovernmental litigant in a civil will not be sealed. Other courts, however, "have addressed this conundrum by substituting the notion of 'higher value' for 'governmental interest' in" the context of civil litigation involving private litigants. *Id.* (citing *Level 3 Comms., LLC v. Limelight Networks, Inc.*, 611 F. Supp. 2d 572, 580-83 (E.D. Va. 2009) (discussing cases that cited right to privacy, property rights in trade secrets, privilege against disclosure of attorney-client communications, and duties created by contract as 'private' interests that might overcome a First Amendment right of access)). In an unpublished, per curiam opinion, the Fourth Circuit has ruled that a district court could have closed a courtroom during a trial and sealed portions of the record to protect trade secrets. *Woven Elec. Corp. v. Advance Grp., Inc.*, 903 F.2d 913, 1991 WL 54118, at *6-7 (4th Cir. April 15, 1991) (citing *In re Iowa Freedom of Info. Council*, 724 F.2d 658, 661 (8th Cir. 1983)). Although the Fourth Circuit did not directly address the "governmental interest" issue, its opinion in *Woven Electric* does suggest that under the right circumstances, certain "higher values" can overcome the First Amendment right of access.

In weighing the competing interests, a court must comply with the procedure set forth by *In re Knight Publishing Company,* 43 F.2d 231 (4th Cir. 1984). First, a court must give the public notice of a request to seal and a reasonable opportunity to challenge it. *Id.* Docketing it reasonably in advance of deciding the issue can suffice for notice. *Id.* A court must consider less

5

drastic alternatives to sealing, and if it decides to seal documents, it must "state the reasons for its decision to seal supported by specific findings, and the reasons for rejecting alternatives to sealing in order to provide an adequate record for review." *Id.*

Here, the motion to seal has been docketed for some time, providing ample time for any interested parties to object. HBC and NFI do not dispute that the First Amendment right of access attaches to the document they seek to seal. The parties contend that the Dameworth Expert Report contains confidential, proprietary information which they imply constitutes trade secrets.

Although it is unclear that the information constitutes a trade secret, the court agrees that the Expert Report does contain some proprietary information which the parties have kept confidential. The court also agrees that the Expert Report contains some proprietary information that perhaps could be considered a trade secret. The court concludes that the parties' interest in maintaining much of the information in the Memorandum as confidential constitutes a "higher value" that outweighs the public's First Amendment right to access it. The court also determines that maintaining the entirety of the document under seal is the least restrictive way to accomplish this end. Accordingly, HBC and NFI's Motion to Seal [DE-227] is ALLOWED.

## II. MOTION TO STRIKE

To the extent that Dr. Holt seeks to strike the Notice of the Bankruptcy Court Order and Request for Trial filed by HBC and NFI, the motion is DENIED. The court will, however, clarify issues raised by the parties' memoranda filed in connection with the motion to strike.

### A. Standing to seek damages

6

Dr. Holt contends that HBC lacks standing to pursue damages for its claims of breach of contract, breach of express and implied warranties, fraud, negligent misrepresentation, and unfair and deceptive trade practices. HBC seeks damages in the form of the royalties it paid to the Holt parties pursuant to the Sublicensing Agreement for use of the Barefoot trademark after the Holt companies allegedly no longer possessed the rights to the trademark. Dr. Holt, in response, argues that under any theory of the case, HBC would have to pay royalties to someone for the right to use the Barefoot name and likeness.

Rather than standing in the constitutional sense, the court perceives that Dr. Holt's argument goes to the correct measure of damages under North Carolina law and the sufficiency of evidence for damages. Damages, whether it be for breach of contract or for fraud, are intended to put the party back in the same position it would have been in had the contract been performed or had the fraud not occurred. *Godfrey v. Res-Care, Inc.*, 165 N.C. App. 68, 78, 598 S.E.2d 396, 404 (2004) ("It is elementary that a plaintiff in a fraud suit has a right to recover an amount in damages which will put him in the same position as if the fraud had not been practiced on him"); *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 665, 464 S.E.2d 47, 59 (1995) (stating same rule for breach of contract). Here, HBC contends that to be put back in the position it would have been but for the alleged breach of contract and/or alleged fraud, it needs to recoup the royalty payments it made to the Holt parties under the Sublicensing Agreement. HBC contends that whether it had to pay royalties to another entity in order to sell the coral calcium product or whether it would have entered into a contract with Barefoot in

7

March 2004 is "irrelevant to HBC's standing to assert a claim for money it actually paid to Holt." HBC's Supplemental Mem. [DE-225] at p. 11.

Despite HBC's assertions, those facts are not irrelevant to the calculation of damages. Again, under HBC's theory of the case, had the breach of contract or fraud (or negligent misrepresentation) not occurred, HBC would not have paid the Holt parties royalties for its sale of Barefoot Coral Calcium products. Of course, HBC also would not have possessed a license, and presumably, without a valid license, it would not have sold the Barefoot Coral Calcium products. HBC, however, *did* think it possessed a valid license, and it sold the Barefoot Coral Calcium products, seemingly in abundance, paying a per-unit $2 royalty to the Holt parties. *See* Dameworth Report [DE-226] at p. 6 (listing sales of 898,661 units of coral calcium products between April 2004 and February 2006). In other words, HBC performed as if it had received its benefit under the bargain and still made sales. This is not a situation where one party sells another party a worthless item or property, and the buying party is thereafter unable to sell the worthless item and sustains a loss. Instead, HBC sold many units of Barefoot Coral Calcium products despite allegedly having a worthless sublicense, and there is no indication that it did so at a loss, thereby incurring actual damages.

Thus, although HBC contends the starting point for any calculation of damages is the recovery of all the royalties it paid to Dr. Holt, such an assertion presumes that HBC was entitled to sell the Barefoot Coral Calcium products despite not possessing a valid sublicense. Indeed, HBC appears to implicitly recognize this, as it explains that its "damages expert recognized that to avoid all liability for offering a Barefoot Coral Calcium Product after March 2004, HBC

8

would have had to enter into a licensing agreement with Barefoot on March 14, 2004." HBC's Supplemental Mem. [DE-225] at p.11. Accordingly, "to conservatively calculate the economic or out of pocket injury to HBC, HBC's damages expert took the total royalties paid to Holt and reduce[d] it by the estimated cost of entering into a license with Barefoot." *Id.* HBC contends its expert used this method "to provide a just and reasonable amount of damages and to eliminate any overcompensation to HBC." *Id.* In so doing, HBC concedes the Holt parties' point: the assumption that HBC would enter into another licensing agreement and the cost of that license is essential to *accurately* measuring damages, i.e., it is essential so as to not *overcompensate* HBC. Accordingly, the measure of HBC's damages is the difference, if any, between what HBC paid to the Holt parties for an allegedly worthless sublicense and what it could have paid for a valid license or sublicense. This measure accords with the traditional measure of actual damages and serves to make HBC whole. *See Phillips v. Chesson*, 231 N.C. 566, 571 58 S.E.2d 343, 347 (1950) (explaining that the measure of damages used should further the purpose of awarding damages, which is to "restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money").

Thus, the question turns to whether HBC has proffered sufficient evidence that, but for the Holt parties' actions , it would have entered into a licensing agreement with Barefoot in March 2004 at a cost of $1 per bottle of supplement sold. A plaintiff bears the burden of proving damages with reasonable certainty. *Olivetti Corp. v. Ames Business Sys., Inc.*, 319 N.C. 534, 356 S.E.2d 578 (1987). Where, as here, the damages claimed are akin to lost profits, a plaintiff need not prove damages with "absolute certainty," but something more than "hypothetical or

9

speculative forecasts" are required. *McNamara v. Wilmington Mall Realty Corp.*, 121 N.C. App. 407-08, 466 S.E.2d 324, 329 (1996). For example, in *Olivetti*, the plaintiff alleged that as a result of the defendant's misrepresentations, it continued to serve as a dealer for defendant's goods and gave up the opportunity to become a dealer for a competitor, and was awarded damages for the profits it allegedly lost from foregoing the opportunity. 319 N.C. at 546, 356 S.E.2d at 585-86. The North Carolina Supreme Court vacated the award of damages, reasoning, *inter alia*, that the plaintiff failed to prove with reasonable certainty that it lost the opportunity to become a dealer for the competitor. *Id.* The court reasoned that the plaintiff had to show, in fact, that the opportunity to become a dealer for the competitor existed. Although the evidence showed that the plaintiff had met with a representative of the competitor about becoming a dealer, it also showed that the representative did *not* offer the plaintiff a dealership and that the representative felt the plaintiff failed to qualify for the undertaking. *Id.* at 546-47, 356 S.E.2d at 586. Under those facts, the North Carolina Supreme Court found there was no competent evidence to support a finding that the plaintiff could have become a dealer for the competitor.

In this case, the only evidence HBC proffers–other than the assumption made by its expert–is the affidavit from Barefoot stating that had he "known about HBC's interest in selling coral calcium with [his] name in March 2004, I would have entered into the same agreement in March 2004 that I did enter into in May 2006 which would have licensed rights to my name in exchange for a royalty of $1 per bottle." Aff. of Barefoot [DE-193] ¶ 17. As the Holt parties note, there is no evidence, however, that as of March 14, 2004, Barefoot and HBC were in contact, knew one another, or had engaged in negotiations with regard to a licensing agreement

10

prior to May 2006. Without such evidence, HBC's contention and Barefoot's assertion in his affidavit amount to conjecture about what might have happened. One can, of course, speculate and hypothesize about what actions HBC would have taken if the Holt parties had informed it in March, 2004, that they allegedly no longer possessed the rights to license the Barefoot coral calcium product. A jury cannot, however, rely on such speculation and conjecture when determining the amount of damages. *Olivetti*, 319 N.C. at 547-48, 356 S.E.2d at 586.

Accordingly, HBC has failed to proffer sufficient evidence to support its claim for actual damages with respect to its claims for breach of contract, breach of express and implied warranties, fraud, negligent misrepresentation, and unfair and deceptive trade practices (to the extent the claim is based upon the facts giving rise to the preceding claims). This failure to proffer sufficient evidence as to actual damages is fatal to HBC's claims for fraud and negligent misrepresentation. *See Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494 (1974) (explaining that an element of a claim for fraud requires proof, *inter alia*, of damages to the injured party); *Piedmont Inst. of Pain Mgmt. v. Staton Found.*, 157 N.C. App. 577, 590-91, 581 S.E.2d 68, 76-77 (2003) (finding that trial court properly granted summary judgment with respect to claims of negligent misrepresentation, constructive fraud and unfair and deceptive trade practices where plaintiff failed to forecast evidence of actual damage caused by the actions of defendants). Accordingly, the Holt parties' Motion for Summary Judgment [DE-173] is ALLOWED as to those claims. Actual damages, however, are not necessary for claims sounding in breach of contract under North Carolina law. *See United States v. D'Elegance Mgmt. Ltd.*, 217 F.3d 843 (Table), 2000 WL 966034, at *5 (July 13, 2000) (unpublished) (per curiam) (noting that "a failure to prove damages is not grounds for judgment as a matter of law on a breach of

contract claim because proof of other elements of such a claim entitles a plaintiff to at least nominal damages") (citing *Robbins v. CW Myers Trading Post, Inc.*, 251 N.C. 663, 111 S.E.2d 884, 886 (1960)). The Holt parties are therefore not entitled to summary judgment on the claims for breach of contract and breach of express and implied warranties, but the jury will be instructed that only nominal damages are available.

## C. Claims against Dr. Holt

The parties' latest memoranda leads the court to believe there is confusion about whether claims against Dr. Holt may go forward.

Again, in the court's April 15, 2011, Order, the court held in abeyance the Holt parties' motions to dismiss for lack of personal jurisdiction, pending notification of whether the bankruptcy trustees would pursue or abandon the alter ego claims against Dr. Holt. Again, the outstanding issue in the motions is whether sufficient facts exist to pierce the corporate veils of Nature's Benefit, Inc., and or Holt Consulting, Inc., so that the contacts of those entities could be imputed to Dr. Holt for personal jurisdiction purposes. Because the issue is inextricably intertwined with the merits of the HBC parties' alter ego claims against Dr. Holt, the court reserved ruling on it. The court explained that if the trustees opted *not* to pursue alter ego claims against Dr. Holt, then the court would allow the jury to make factual findings on the piercing the corporate veil issue. The court also held in abeyance the Motion to Strike the Expert Testimony of Martin Brinkley.

Accordingly, the outstanding issues awaiting rulings by this court are (1) whether the expert report and/or testimony of Martin Brinkley is admissible and (2) whether there is

12

sufficient evidence from which a jury could conclude that Nature's Benefit or Holt Consulting, Inc., are the alter egos of Dr. Holt.

### 1. Admissibility of expert report and/or testimony of Martin Brinkley

Defendants have filed a motion to exclude the expert report of Martin Brinkley, arguing (1) his report, and presumably the testimony he would offer at trial, invades the province of the court and is therefore inadmissible pursuant to Rule 704 of the Federal Rules of Evidence and (2) he cannot qualify as an expert under Rule 702 with regard to piercing the corporate veil under New Jersey law. Brinkley has been retained by HBC "as an expert in corporate law, formation, and maintenance of corporations and limited liability companies" and has been asked "to express an opinion . . . as to whether any of the factors that have been expressly or impliedly considered by North Carolina or New Jersey courts in deciding whether to disregard a corporation's separate and independent existence . . . are present in the case of Holt MD Consulting, Inc., Nature's Benefit, Inc., or Wellness Publishing, Inc." Expert Report [DE-83-2] ¶¶ 3-4.

Rule 702 of the Federal Rules of Evidence provides, in pertinent part:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . .

Fed. R. Evid. 702(a). Rule 704(a), in turn, allows the admission of expert testimony that "embraces an ultimate issue." Fed. R. Evid. 704(a). Accordingly, "questions of fact that are committed to resolution by the jury are the proper subject of opinion testimony." *United States v. McIver*, 470 F.3d 550, 561 (4th Cir. 2006) (citing Fed. R. Evid. 704).

13

An important qualifier of this general rule, however is that the proposed opinion testimony must be " 'otherwise admissible.'" *United States v. Barile*, 286 F.3d 749, 750 (4th Cir. 2002) (quoting Weinstein's Federal Evidence § 704.04 (2d ed. 2001)). "This means that the testimony must be helpful to the trier of fact, in accordance with Rules 701 and 702, and must not waste time, in accordance with Rule 403." *United States v. Perkins*, 470 F.3d 150, 157 (4th Cir. 2006); *see also Barile*, 286 F.3d at 759-60 (explaining that Rules 403, 701 and 702 "afford ample assurances against the admissions of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day"). "The touchstone of admissibility of testimony that goes to the ultimate issue, then, is helpfulness to the jury." *Perkins*, 470 F.3d at 157.

Generally, courts have found proffered "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts" to be unhelpful to a jury, and therefore inadmissible. *McIver*, 470 F.3d at 562; *see also Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997) ("It is, therefore, apparent that testimony offering nothing more than a legal conclusion–i.e., testimony that does little more than tell the jury what result to reach–is properly excluded under the Rules."); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 365-68 (4th Cir. 1986) (finding inadmissible proffered expert opinion concerning whether, under securities laws, disclosure of a fact was required because the expert would "usurp the function of a judge"); Weinstein's Federal Evidence § 704.04 (2d. ed. 2001) ("The most common reason for excluding opinion testimony that gives a legal conclusion is lack of helpfulness. . . . The testimony supplies the jury with no information other than the witness's view of how the verdict should be read."). The district court's task, therefore, " 'is to distinguish [helpful] opinion testimony that embraces

14

an ultimate issue of fact from [unhelpful] opinion testimony that states a legal conclusion.' "
*Perkins*, 470 F.3d at 158 (alteration in original) (quoting *Barile*, 286 F.3d at 760).

The Fourth Circuit has given guidelines on how to approach this task, explaining that "the best way to determine whether opinion testimony is unhelpful because it merely states legal conclusions is to determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *Id.* (alterations omitted). Accordingly, a "district court should first consider whether the question tracks the language of the legal principle at issue or of the applicable statute; then, the court should consider whether any terms employed have specialized legal meaning." *Id.* The Fourth Circuit recognizes that this rule, and its suggested method for employing the rule, "makes ultra-fine distinctions with admissibility often turning on word choice." *Id.* For example, "the question 'Did T have capacity to make a will?' impermissibly asks for a legal conclusion, while the question 'Did T have sufficient mental capacity to know the nature and extent of his property?' does not." *Id.* (quoting Fed. R. Evid. 704 advisory notes).

Here, Mr. Brinkley's expert report sets forth a number of conclusions, including:

32. Holt MD Consulting, Inc., Wellness Publishing, Inc., and Nature's Benefit, Inc., have failed to observe basic corporate formalities and may have been inadequately capitalized.

33. The funds of Holt MD Consulting, Inc. and Nature's Benefit, Inc. have been commingled with each other and with the personal finances of Dr. Holt.

34. There has been commingling of employees between Holt MD Consulting, Inc., Wellness Publishing, Inc., and Nature's Benefit, Inc.

35. Dr. Holt has from time to time, and in significant respects, treated the corporate assets of Holt MD Consulting, Inc., Wellness Publishing, Inc., and Nature's Benefit, Inc. as if they were his personal assets.

15

36. Dr. Holt has dominated and controlled Holt MD Consulting, Inc. Wellness Publishing, Inc., and Nature's Benefit, Inc. such that these entities are his mere instrumentalities or alter egos.

37. Sufficient evidence exists for a court or jury to determine the corporate veils of Holt MD Consulting, Inc., Wellness Publishing, Inc., and Nature's Benefit, Inc. should be pierced to hold Dr. Holt personally liable for the acts of these entities.

Expert Report [DE-83-2] ¶¶ 32-37. The opinions proffered in Paragraphs 36 and 37 plainly constitute legal conclusions. Both conclusions not only track the language of the legal principle at issue, but also use terminology having a specialized legal meaning. *See e.g., Sheet Metal Workers Int'l Ass'n Local Union No. 67 v. Todd-Ford Mgmt, Co.*, Civil Action No. SA-03-CA-290-XR, 2005 WL 5977617, at *2 (N.D. Tex. July 12, 2005) (explaining that expert witnesses are not allowed to offer conclusion of law, and therefore the defendant's proposed expert witness would not be permitted to offer an opinion on whether companies were alter egos of one another). HBC appears to recognize this, as its counsel stated on the record that Brinkely "will never be asked to opine on the ultimate issue of whether the veil should be pierced for any of your clients." Dep. of Brinkley [DE-181-4] at p. 24.

The remaining conclusions, however, do not constitute impermissible legal conclusions. Although the language used in paragraphs 32-35 does track the language courts use to describe factors for determining whether an entity's corporate veil should be pierced, none of the conclusions utilize terms with specialized legal meaning. Moreover, courts have allowed qualified witnesses to offer testimony on corporate norms and governance and whether an entity's actions diverged from the corporate norms. *See The Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037, 1045 (D. Az. 2005) (precluding the portion of a professor's expert report which "reads likes a legal brief" but allowing the professor to opine on corporate

16

norms and the ways in which the relationship between two corporations diverged from corporate norms); *Cary Oil Co., Inc. v. MG Refining & Mktg., Inc.*, No. 99 Civ. 1725(VM), 2003 WL 1878246, at *5 (S.D.N.Y. April 11, 2003) (allowing a law professor to testify regarding general corporate governance issues and offer opinion on whether the evidence indicated a parent corporation exceeded the control normally exercised over a subsidiary). Accordingly, the court will allow Brinkley to testify to corporate norms and governance, and offer opinions on whether the relationship between Dr. Holt and Holt Consulting and Nature's Benefit diverged from those norms. Moreover, to the extent Brinkley's report contains explanations of the law governing piercing the corporate veil, *see* Expert Report [DE-83-2] ¶¶ 11-14, the court agrees with HBC that Brinkley included the discussion of relevant North Carolina and New Jersey cases in order to provide the background from which his opinions and analysis arise. HBC is cautioned, however, that this court remains the final arbiter of what constitutes the governing law in determining whether an entity's corporate veil should be pierced. Accordingly, in the event Brinkley's report is introduced into evidence, paragraphs 11-14 and 36-37 must be redacted from the report.

Defendants also contend that Brinkley cannot qualify as an expert under Rule 702 in this action because he is not licensed to practice in New Jersey,[1] he has no practical experience with New Jersey corporate or business law, and he has never practiced in New Jersey as counsel *pro hace vice.* The fact, however, that Brinkley is not licensed in New Jersey or regularly practices in New Jersey is not determinative of whether he has specialized knowledge or experience which will assist the trier of fact. Issues of corporate governance and norms are not inherently state-

---

[1] For the reasons discussed below, this court uses the law of the state of incorporation for determining whether an entity's corporate veil should be pierced.

specific. *See Pinal Creek Grp.*, 352 F. Supp. 2d at 1044-45 (allowing a law professor at a New York law school to opine on corporate norms and how the subject corporations diverged from those corporate norms where the relevant state law was Maine); *Cary Oil*, 2003 WL 1878246, at *6 (allowing a law professor to render opinions about matters of corporate governance and not mentioning the jurisdiction in which the professor was licensed to practice or the jurisdictions about which the professor had lectured and published). The court will not exclude Brinkley's testimony on this basis.

For the foregoing reasons, the Motion to Strike the Expert Testimony of Martin Brinkley [DE-83] is ALLOWED in part and DENIED in part. Paragraphs 11-14 and 36-37 must be redacted from Brinkley's report before it may be introduced into evidence, and Brinkley will be prohibited from opining on whether the corporate veil of Nature's Benefit or Holt Consulting should be pierced. In all other respects, the motion is denied.

## 2. Sufficiency of evidence supporting the corporate veil

Where a defendant corporation is merely the alter ego of its owner, the corporate veil may be pierced to subject the owner to both personal jurisdiction and liability. *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985) ("It is well recognized that courts will disregard the corporate form or 'pierce the corporate veil' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or achieve equity."); *The Mall at IV Grp. Props., LLC v. Roberts*, No. Civ.A. 02-4692(WHW), 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005) ("Piercing the corporate veil is an equitable remedy through which a court may impose liability on an individual or entity normally subject to the limited liability protections of the corporate form."); *Newport News Holdings Corp. v. Virtual City*

18

*Vision, Inc.*, 650 F.3d 423, 433 (4th Cir. 2011) (" 'Federal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual . . . that would not ordinarily be subject to personal jurisdiction in that court when the individual is an alter ego . . . of a corporation that would be subject to personal jurisdiction in that court.' ") (quoting *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 n.18 (5th Cir. 2002)). This court, in the past, has determined that the law of the state of incorporation should govern a claim for veil-piercing or alter ego status. *Jo v. Piston Manuf. Inc.*, Civil Action No. 4:06-CV-76-F, 2009 WL 1578522, at *8 (E.D.N.C. June 2, 2009) (citing *Dassault Falcon Jet Corp. v. Oberflex, Inc.* 909 F. Supp. 345 (M.D.N.C. 1995)). Nothing in the parties' briefing persuades the court to abandon its previous determination and use the law of the forum state. Accordingly, because both Nature's Benefit and Holt Consulting, Inc., are incorporated in New Jersey, the law of that state governs this court's assessment of the piercing the corporate veil issue.

"Under New Jersey law, the separate corporate existence of a company, and the limited liability of its shareholders, are 'fundamental propositions.' " *Las Vegas Sands Corp. v. Ace Gaming, LLC*, 713 F. Supp. 2d 427, 444 (D.N.J. 2010) (quoting *State Dept. of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 500, 468 A.2d 150, 164 (1983)). Accordingly,

> [e]xcept in cases of fraud, injustice, or the like, courts will not pierce the corporate veil. The purpose of the doctrine of piercing the corporate veil is to prevent an independent corporation from being used to defeat the ends of justice, to perpetuate fraud, to accomplish a crime, or otherwise to evade the law.

*Ventron*, 94 N.J. at 500-01, 468 A.2d at 164. In New Jersey, two elements must be shown to pierce the corporate veil: (1) there must be corporate dominance by an individual such that the

corporation had no separate existence and is merely a conduit for the individual; and (2) the

individual has abused the privilege of incorporation by using the corporation to perpetuate a

fraud or injustice, or otherwise to circumvent the law. *Id.; see also Craig v. Lake Asbestos of*

*Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988) (quoting *Ventron* favorably).

In determining whether the first element is established, courts examine a number of non-

binding factors, including:

> gross undercapitalization . . . failure to observe corporate formalities, non-
> payment of dividends, the insolvency of the debtor corporation at the time,
> siphoning of funds by the dominant stockholder, non-functioning of other officers
> or directors, absence of corporate records, and the fact that the corporation is
> merely a facade for the operations of the dominant stockholder or stockholders.

*Craig*, 843 F.2d at 150 (internal quotations and citations omitted) (applying New Jersey law).

"With regard to the second element, there must be some 'wrong' beyond simply a judgment

creditor's inability to collect (otherwise the corporate veil would be pierced in virtually every

case)." *Roberts*, 2005 WL 3338369, at \*3. Instead, the plaintiff must show that the defendant,

"via the corporate form, perpetrated 'a fraud, injustice or the like.' " *State Capital Title &*

*Abstract Co. v. Pappas Bus. Serv., LLC*, 646 F. Supp. 2d 668, 679 (D.N.J. 2009) (quoting

*Roberts*, 2005 WL 3338369, at \*3). "The issue of piercing the corporate veil is submitted to the

factfinder, unless there is no evidence sufficient to justify disregard of the corporate form."

*Verni v. Harry M. Stevens, Inc.*, 387 N.J. Super. 160, 199, 903 A.2d 475, 498 (N.J. Super. Ct.

App. Div. 2006).

HBC and NFI have proffered sufficient evidence from which a jury could find the

corporate veils of both Holt Consulting and Nature's Benefit should be pierced. With regard to

Holt Consulting, the record shows the corporation failed to file annual reports for at least two

20

years, resulting in the revocation of its corporate status in 2007. *See* Business Entity Status Report [DE-170-14]. Although Holt Consulting later took steps to be reinstated, the fact remains that during the time period of some of the events giving rise to the claims in this action, it failed to comply with the basic corporate formality of filing an annual report. Moreover, evidence exists from which a jury could find that Holt Consulting failed to comply with other basic corporate formalities.

In deposition testimony from 2007, Dr. Holt testified that Holt Consulting did not have a board of directors. 2007 Deposition of Stephen Holt [DE-170-1] at p. 49. When asked if he and his son, who Dr. Holt believed owned 49% of the shares of Holt Consulting, documented decisions on business matters in any sort of minutes or records, Dr. Holt responded "[p]ossibly in emails" and that "[t]here may be certain accounting issues are subject to documentation" by a CPA used by Holt Consulting, who, according to Dr. Holt, would retain all documentation of business decisions. *Id.* at 50-51. In deposition testimony from 2008, however, Dr. Holt stated that he was the custodian for any business records, and when shown drafts of bylaws for Holt Consulting, a wavier of the first meeting of the shareholders, and documents specifying the identities of officers in the corporation, he testified the drafts were never used by the corporation. 2008 Deposition of Stephen Holt [DE-170-4] at pp. 135-40. In fact, he testified that to his knowledge, Holt Consulting did not have any document akin to bylaws or an operating agreement, and that a draft of a waiver of notice of a meeting of shareholders was "of no significance." *Id.* at 137-38 ("[Y]ou will not find . . any . . substantial documents of . . . any bylaws or operating aspects of Holt MD Consulting."). He also testified that he never ascertained whether or not his son was in fact a shareholder of the corporation. *Id.* at 141. In

other words, Dr. Holt, the purported custodian of records for Holt Consulting, strongly suggested that essential documents such as bylaws, minutes of board of directors meetings, a ledger of shareholders and waivers of meetings of the shareholders did not exist. His testimony also suggested that Holt Consulting never appointed any officers. *Id.* at 138. Despite this testimony, the Holt parties later produced in discovery–after Brinkley issued his report noting the lack of corporate records–the share certificates, bylaws, and organizational minutes of Holt Consulting. *See* Corporate Documents [DE-210-1]. Given this contrast between Dr. Holt's testimony—"[Y]ou will not find . . . any . . . substantial documents of . . . any bylaws or operating aspects of Holt MD Consulting"–and what was later produced by the Holt parties, a jury could look skeptically at these corporate documents. Therefore, there is sufficient evidence from which a jury could find that Holt Consulting failed to comply with basic corporate formalities.

In addition to the disregard of corporate formalities, there is sufficient evidence from which a jury could conclude that Dr. Holt dominated Holt Consulting such that it had no separate existence from him. To be sure, some domination in a closely held corporation is to be expected. *See Pappas*, 646 F. Supp. 2d at 680 (explaining that where a corporation is comprised of only one shareholder or member, that one member must obviously dominate the corporation if it is to function). Here, however, despite the fact that Fraser Holt ostensibly owned half the shares of Holt Consulting and was allegedly the Secretary-Treasurer of Holt Consulting, he could not answer any questions about the corporation's financial health, could not state how many shares he owned, and stated his father made "[a]bsolutely every single" business decision for the company. Dep. of Fraser Holt [DE-170-9] at pp. 26-33 (stating he did not know the company's

22

revenues, expenses, assets, debts, whether the company has loaned money to or borrowed money from other companies). Fraser Holt also appears to be unaware that he had been appointed Secretary-Treasurer. Fraser Holt also testified that he had received $150,000 in dividends from the company, and that because his father "makes most executive decisions in terms of financials" he would say that Dr. Holt made the decision to pay Fraser that amount in dividends. *Id.* at p. 27. Thus, there is evidence from which a jury could find that Dr. Holt disregarded the corporate realities of his ownership and treated the company as his own.

Given this preceding evidence, the court concludes that a jury could find that Holt Consulting was merely a conduit for Dr. Holt. Additionally, there is sufficient evidence to support a finding that HBC has established the second element of veil piercing, that Dr. Holt used Holt Consulting to perpetuate an injustice. In the light most favorable to HBC, a jury could find that Dr. Holt used Holt Consulting, and the company's contacts and goodwill, to inflict damage upon HBC by endeavoring to interfere with a contract benefitting HBC. If the jury believes HBC's theory of the facts and the case, to allow Dr. Holt to then hide behind the corporate veil of Holt Consulting would lead to the promotion of injustice, and allow Dr. Holt, the dominant personality behind Holt Consulting, to be unjustly enriched by his actions. *See Ventron*, 94 N.J. at 501, 468 A.2d at 164 ("[L]iability generally is imposed only when the [dominant party] has abused the privilege of incorporation by using [the corporate form] to perpetrate a fraud or injustice, or otherwise to circumvent the law.").

With regard to Nature's Benefit, the evidence shows that it, too, failed to file annual reports for two years resulting in the revocation of its corporate status. *See* Business Entity Status Report [DE-170-14]. Unlike Holt Consulting, however, it has proffered a plethora of

corporate documents showing of Nature's Benefit's compliance with corporate formalities, and there is no evidence in the record that would lead to the questioning of the veracity of the documents. *See* Corporate Documents [DE-210-1]. More concerning for Nature's Benefit, however, is the fact that the record reflects that Dr. Holt has used corporate funds of the company as his own. The accountant for Nature's Benefit testified that Dr. Holt paid personal expenses directly out of Nature's Benefit's accounts, and recorded these transactions as dividend distributions. Dep. of Richard Lucas [DE-170-5] at pp. 73-75. For example, Lucas testified that alimony settlement payments to Dr. Holt's ex-wife were paid out of Nature's Benefit, and classified as a dividend distribution. *Id.* The record also reflects that Nature's Benefit recorded $51,482.33 in expenses coded as "Uniforms" despite testimony that employees did not wear uniforms and were required to wear a company shirt on very limited occasions. Dameworth Report [DE-226] at p. 16; Dep. of Andrea Parris [DE-170-10] at p. 48; Dep. of Fraser Holt [DE-170-9] at pp. 34-35. Commingling and using corporate funds for personal use is a very significant factor in the piercing the corporate veil analysis. *Erickson v. Leonard*, No. 47-02, 2008 WL 706278, at *7 (N.J. Super. App. Div. March 18, 2008) (stating that the failure to distinguish between shareholder money and assets and corporate money and assets "is probably the most significant" factor in determining whether to pierce the corporate veil).[2]

---

[2] Not compelling, however, is the HBC's parties assertion that Holt Consulting and Nature's Benefit are presently undercapitalized. There is little dispute, for example, that Holt Consulting and Nature's Benefit are presently undercapitalized. There is no evidence, however, that at the time they were formed, either corporation was undercapitalized. " 'The adequacy of capital is to be measured as of the time of formation of the corporation.' " *Verni v. Harry M. Stevens, Inc.*, 387 N.J. Super. 160, 200-201, 903 A.2d 475, 499 (App. Div. 2006) (quoting 1 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41.33). "This inquiry 'is most relevant for the inference it provides into whether the corporation was established to defraud its creditors or other improper purpose such as avoiding the risks known to

24

Moreover, NFI also has produced evidence that Dr. Holt used Nature's Benefit to inflict an injustice on NFI. Again, in the light most favorable to NFI, a jury could find that Dr. Holt used Nature's Benefit, and the company's contacts and goodwill, to inflict damage upon NFI by contacting a former customer of Nature's Benefit and current customer of NFI and endeavoring to tortiously interfere with NFI's contract with that customer.

Based on the foregoing, the court concludes there is sufficient evidence from which a jury could find that the corporate veils of either Holt Consulting or Nature's Benefit may be pierced. The Motions to Dismiss based on lack of jurisdiction [DE-139; DE-140] are therefore DENIED.

## III. CONCLUSION

For the foregoing reasons, Dr. Holt's Motion to Strike [DE-232] is DENIED, the Motions to Dismiss [DE-139; DE-140] are DENIED, and the Motion to Seal [DE-227] is ALLOWED. Additionally, the Motion for Summary Judgment [DE-173] is ALLOWED as to HBC's claims for fraud and negligent misrepresentation and its claim for actual damages stemming from its payment of royalties. The Holt parties are not entitled to summary judgment on the claims for breach of contract and breach of express and implied warranties, but the jury will be instructed that only nominal damages are available. Furthermore, the Motion to Strike the Expert Testimony of Martin Brinkley [DE-83] is ALLOWED in part and DENIED in part. Paragraphs 11-14 and 36-37 must be redacted from Brinkley's report before it may be introduced into evidence, and Brinkley will be prohibited from opining on whether the corporate veil of Nature's Benefit or Holt Consulting should be pierced. In all other respects, the motion is denied.

---

be attendant to a type of business.' " *Id.* at 200-01, 903 A.2d at499 (quoting *Trs. of the Nat'l Elevator Indus. Pension, Health Benefits, and Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003)).

25

The Clerk of Court is DIRECTED to schedule and notice a status conference in this matter before the undersigned on Friday, October 26, 2012, at 1:00 p.m.

SO ORDERED.

This the 27 day of September, 2012.

James C. Fox
Senior United States District Judge

26